Filed 10/2/13   LA Community College Dist. v. GS Roosevelt CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| LOS ANGELES COMMUNITY COLLEGE DISTRICT, <br><br>     Cross-complainant and Appellant, <br><br> v. <br><br> GS ROOSEVELT, LLC, <br><br>     Cross-defendant and Respondent. | B244809 <br><br> (Los Angeles County <br> Super. Ct. No. BC377008) |
| LOS ANGELES COMMUNITY COLLEGE DISTRICT, <br><br>     Petitioner, <br><br> THE SUPERIOR COURT OF <br> LOS ANGELES COUNTY, <br><br>     Respondent; <br><br> GS ROOSEVELT, LLC, <br><br>     Real Party in Interest. | B247683 |

APPEAL from an order of the Superior Court of Los Angeles County, Frederick Carl Shaller, Judge.  Reversed and remanded.

ORIGINAL PROCEEDING; petition for a writ of mandate.  Dismissed.

Haight Brown & Bonesteel, Morton G. Rosen, and Jeffrey A. Vinnick for Cross-complainant, Appellant, and Petitioner.

No appearance for Respondent (B247683).

Abelson Herron Halpern, Vincent H. Herron, Susan P. Welch, and Gregory O. Lunt for Cross-defendant, Respondent, and Real Party in Interest.

_____

In this consolidated appeal and petition for writ of mandate, Los Angeles Community College District (District) challenges the denial of its motions for entry of injunction and judgment.  As to the appeal from the October 1, 2012 order denying District's request for a preliminary injunction and judgment against GS Roosevelt, LLC, we reverse with directions.  As to the petition for writ of mandate from the January 10, 2013 order denying District's request to enter a judgment and injunction against Roosevelt Lofts, LLC, and its successor in interest, we dismiss the petition as moot.

**INTRODUCTION**

This litigation, which was the subject of a prior appeal, concerns a dispute over the use of a private alley in downtown Los Angeles.  The 30-foot by 90-foot alley is surrounded by buildings on three sides and the owners of those three buildings share a common easement over the alley.

The 700 Wilshire Building sits on the eastern edge of the alley.  700 Wilshire Properties (700 Wilshire), which owns the 700 Wilshire Building and the appurtenant easement over the alley, also owns the eastern half of the alley.

2

The 770 Wilshire Building sits on the western edge of the alley. District, which owns the 770 Wilshire Building and the appurtenant easement over the alley, also owns the western half of the alley.

The Roosevelt Building sits at the southern end of the alley. GS Roosevelt, which presently owns the Roosevelt Building and the appurtenant easement over the alley, has no ownership interest in the alley. During this litigation, the Roosevelt Building and the appurtenant easement had two prior owners: (1) When the complaint was filed, the Roosevelt Building and easement were owned by Alliance Property Investments, Inc., Carla Ridge, LLC, Maverick Holdings, LLC, S & M Yashoua Investments, and Desert Field, LLC (collectively, Alliance). (2) When the prior appeal from the judgment was filed, the Roosevelt Building and easement were owned by Roosevelt Lofts. In order to distinguish between GS Roosevelt, who did not own the building and easement during trial, and the defendants who appeared at trial—Alliance, Roosevelt Lofts, Urban Builders, Inc., and The Roosevelt Building Owners' Association—we will refer to GS Roosevelt as GSR and to the defendants who appeared at trial as the Roosevelt Parties.

The common easement was created by grant deeds recorded in the early 1900's, before the three buildings were constructed. The Roosevelt Building and the 700 Wilshire Building were constructed in 1925 and the 1960's, respectively, with loading docks that face the alley. The 770 Wilshire Building was constructed in the 1970's with a subterranean service elevator that, when in use, partially blocks the alleyway and, when not in use, descends beneath doors that, when closed, form part of the alleyway's surface.

For several decades, the three buildings used the alley for commercial delivery and trash trucks, loading docks, the subterranean elevator, and dumpsters. The 700 and 770 Wilshire Buildings also used the alley as an emergency exit.

This litigation concerns a dispute over the Roosevelt Building's unilateral decision in 2007 to change the way in which the alley was being used. Before 2007, the alley had never been used for private vehicular traffic and there were no parking garage entrances or exits on the alley. But in 2007, the Roosevelt Building was converted to condominiums and its loading dock was replaced with a parking garage entrance/exit on

the alley. The sudden prospect of private vehicular traffic in the alley led 700 Wilshire to initiate this lawsuit.

700 Wilshire contended the historic uses of the alley (delivery and trash trucks, loading docks, subterranean elevator, dumpsters, emergency exit) were dangerously incompatible with the Roosevelt Building's proposed use of the alley for parking garage access. Based on its belief that such a change in use would overburden the easement, 700 Wilshire filed a complaint for declaratory and injunctive relief to prevent the Roosevelt Building from using the alley for parking garage access. District, who was named as an indispensible party in 700 Wilshire's complaint, shared 700 Wilshire's belief that the change in use was incompatible with the existing uses of the alley and filed a similar cross-complaint for declaratory and injunctive relief.

At trial, an advisory jury found the proposed use of the alley for parking garage access would overburden the easement. However, the trial court rejected this finding and, based on its determination that the proposed use would not overburden the easement, entered a judgment that prohibited 700 Wilshire and District from interfering with the Roosevelt Building's use of the alley for parking garage access.

While 700 Wilshire and District were appealing from the judgment, Roosevelt Lofts, which then owned the Roosevelt Building and the appurtenant easement, went bankrupt. While the prior appeal was pending, the bankruptcy court confirmed a reorganization plan that allowed Roosevelt Lofts to transfer the Roosevelt Building, the appurtenant easement, and the judgment (which was still being appealed) to GSR, the present owner.

Before the prior appeal was argued, GSR and Roosevelt Lofts filed a joint motion for substitution of parties, which we granted on October 14, 2011. After GSR was substituted for Roosevelt Lofts, GSR appeared at oral argument and, after we reversed the judgment, filed unsuccessful petitions for rehearing and review.

After the matter was remanded to the superior court, 700 Wilshire and District filed several motions for entry of a preliminary injunction, injunction, and judgment that, in accordance with our disposition in the prior appeal, would have prohibited GSR from

4

using the alley for parking garage access. However, the superior court refused to prohibit GSR from using the alley for parking garage access based on its belief that it was precluded from doing so by certain orders of the bankruptcy court.

In the matters currently before us—District's appeal and petition for writ of mandate—District contends that because GSR was a party to the prior appeal, GSR was bound as a party by our disposition in the prior appeal and the superior court had no valid grounds for refusing to prohibit GSR from using the alley for parking garage access. In opposition to District's appeal and petition for writ of mandate, GSR denies that it is a party to this litigation and argues to affirm the orders because, in the absence of personal jurisdiction, the court may not enter injunctive or declaratory relief against a nonparty. GSR also argues the orders, if reversed, would violate orders of the bankruptcy court.

## ADDITIONAL FACTS AND PROCEDURAL BACKGROUND

### I.     Additional Allegations

In addition to its claims for declaratory and injunctive relief to prohibit the use of the alley for parking garage access, 700 Wilshire alleged claims against the Roosevelt Parties for trespass and nuisance. 700 Wilshire contended that during the Roosevelt Building's condominium conversion project, the Roosevelt Parties entered the alley to perform work that 700 Wilshire did not approve (installation of an underground conduit and a gate, the grading and repaving of pavement).

In addition to its similar claims for declaratory and injunctive relief, District alleged a fraud claim against the Roosevelt Parties, who allegedly had concealed their plan to use the alley for parking garage access. District claimed that if it had known of this plan, it would have denied the underground utility easement for the conversion project. District also claimed the Roosevelt Parties had promised but failed to replace District's subterranean elevator in the alley, which they allegedly damaged while working on the alley.

5

The Roosevelt Parties claimed they had a secondary easement to maintain the alley. The Roosevelt Parties filed a cross-complaint against 700 Wilshire, seeking to apportion the cost of the work performed on the alley, which they contended was necessary to maintain the easement.

## II.    Sanctions Against District

Before trial, District installed several bollards (steel posts) around the damaged subterranean elevator doors in the alley. District contended the Roosevelt Parties' resurfacing work had raised the pavement several inches above the elevator doors, which were no longer flush with the pavement. District installed the bollards to keep pedestrians and vehicles away from the doors.

The Roosevelt Parties obtained a temporary restraining order (TRO) that required District to remove the bollards. While District was appealing the TRO, the Roosevelt Parties requested that District be held in contempt for failing to remove the bollards. After a contempt hearing, the trial court sanctioned District $1,000 per day. District removed the bollards and tendered, under protest, a $1,000 check to the court clerk.

## III.    Trial and Judgment

During trial, the Roosevelt Parties moved for nonsuit of District's fraud claim. The trial court granted the motion based on insufficient evidence of compensatory damages for fraud.

As to the remaining claims, the jury returned the following special verdict and interrogatory findings:

(1) The jury found the Roosevelt Parties had intentionally entered 700 Wilshire's side of the alley without permission to perform work that was not authorized by a secondary easement to maintain the alley. Based on this finding, the trial court denied the Roosevelt Parties' cross-claim for apportionment of repair costs.

(2) Although the jury found the work on the alley was not authorized by a secondary easement, the jury found the work did not cause any actual harm or

6

unreasonably interfere with 700 Wilshire's enjoyment of the alley. Based on this finding, the trial court denied 700 Wilshire's claims for trespass and nuisance.

(3) The jury found that allowing private vehicular traffic in the alley would overburden the easement. However, the trial court rejected this finding. Based on its independent review of the evidence, the trial court found the evidence was insufficient to show that allowing private vehicular traffic in the alley would overburden the easement.

After permitting the Roosevelt Parties to amend their cross-complaint to allege a claim for injunctive relief, the trial court entered a judgment and permanent injunction against 700 Wilshire and District. The judgment permanently enjoined and restrained 700 Wilshire and District from directly or indirectly interfering with the free passage of vehicles or pedestrians in the alley, from "erecting, placing or maintaining steel bollards or other obstructions in the ALLEYWAY," and from "damaging or destroying the surface of the ALLEYWAY." 700 Wilshire and District timely appealed from the judgment (the prior appeal).

## IV. Roosevelt Lofts' Bankruptcy, Transfer of Property, and Motion for Substitution of Parties

While the prior appeal was pending, Roosevelt Lofts filed a Chapter 11 bankruptcy petition. Its bankruptcy estate included the Roosevelt Building, the appurtenant easement, and the judgment (which was being appealed) that permanently enjoined and restrained 700 Wilshire and District from interfering with Roosevelt Loft's use of the alley for parking garage access.

While the prior appeal was pending, the bankruptcy court allowed Roosevelt Lofts to sell approximately 65 condominium units in the Roosevelt Building. The bankruptcy court ordered that the condominium purchasers be informed of the pending appeal from

7

the judgment, which, if successful, could eliminate the access to the parking garage on the alley, but would not eliminate the two other access points on the street.[1]

Also while the prior appeal was pending, the bankruptcy court confirmed a reorganization plan that allowed GSR to acquire the Roosevelt Building, the appurtenant easement, and the judgment (which was being appealed) from Roosevelt Lofts. After the property was transferred, GSR and Roosevelt Lofts filed a joint motion in the prior appeal for substitution of parties.[2] In that motion, GSR described itself as the "sole owner" of the Roosevelt Building, the appurtenant easement, and the judgment, and asked to be substituted "as Respondent for all purposes in this action."

We granted GSR's motion for substitution of parties on October 4, 2011.[3] On October 14, 2011, GSR appeared through its counsel at oral argument and the appeal was submitted on that date.

---

[1] The bankruptcy court ordered that prospective purchasers be informed that if "District is successful in its appeal(s), use of the alleyway by vehicles entering or exiting the ground floor and upper level parking garage may be restricted or prohibited. In such event, ingress to and egress to and from the Roosevelt Building would still be available through two separate access points on Flower Street (one which serves the lower level parking areas, and one which serves the ground floor and upper level parking areas). As a result, there will still be ingress to and egress from two separate access points on Flower Street, although traffic flow could potentially increase at the ground floor access. Although traffic flow within the Roosevelt Building garage on the ground floor could potentially become more inconvenient if the District prevails on its appeal(s), there is no change in the ultimate fact that parking on both the lower and upper levels at the Roosevelt Building will remain available for resident and guest use. [¶] The lawsuit does not concern or have any effect on the use of the lower levels of the parking garage which will continue to have access via a separate access point on Flower Street."

[2] Rule 8.36(a) of the California Rules of Court provides: "Substitution of parties in an appeal or original proceeding must be made by serving and filing a motion in the reviewing court. The clerk of that court must notify the superior court of any ruling on the motion."

[3] Our substitution order stated in relevant part: "The Court having reviewed and considered the motion of Respondent Roosevelt Lofts, LLC to substitute GS Roosevelt,

8

## V. Our Reversal of the Judgment in *700 Wilshire I*

On November 8, 2011, we issued our opinion in the prior appeal reversing the judgment and permanent injunction against 700 Wilshire and District. (*700 Wilshire Properties v. Alliance Property Investments*, *Inc.* (Nov. 8, 2011, B225501, B226613) review den. Feb. 15, 2012, S198808 (*700 Wilshire I*).) We concluded the Roosevelt Parties' unilateral decision to begin accessing the parking garage through the alley was not within the normal development of the Roosevelt Building and would therefore overburden the easement. We held that, in light of the jury's special findings and the applicable law pertaining to the shared use of a common easement, 700 Wilshire and District were entitled to a judgment in their favor on their claims for declaratory and injunctive relief. We also reversed the order imposing sanctions and the nonsuit and dismissal of District's cross-complaint for fraud and remanded for a new trial of the fraud claim. We directed that upon completion of the new trial of District's fraud claim, the superior court was to enter a new judgment that, consistent with the views set forth in our opinion, granted appropriate declaratory and injunctive relief to 700 Wilshire and District.

---

LLC, a Delaware Limited Liability Company ('GS Roosevelt') in its place and stead as Respondent for all purposes in this action and it appearing that, pursuant to a confirmed Plan of Reorganization entered on August 9, 2011 by the United States Bankruptcy Court for the Central District of California in the Matter of *In re: Roosevelt Lofts*, *LLC* [USBC Case No. 1:09-bk-14214-GM] (the 'Confirmed Plan'), Roosevelt Lofts, LLC has transferred all of its right, title and interest in this pending litigation and in the real property and appurtenant easement that form the subject of this action to GS Roosevelt; and that GS Roosevelt is now the sole owner of the said real property and appurtenant easement and of the judgment that forms the subject of this appeal; and good cause appearing therefor[], hereby grants the said motion and ORDERS that: [¶] GS Roosevelt, LLC, a Delaware Limited Liability Company, is hereby substituted in place and stead of Roosevelt Lofts, LLC as Respondent for all purposes in this action."

GSR filed a petition for rehearing in which it challenged the substantive merits of our decision.[4] After we denied the rehearing petition, GSR filed a petition for review in the California Supreme Court.[5] Following the denial of that petition, our remittitur issued on February 22, 2012.

## VI. Postremand Proceedings in the Superior Court and Bankruptcy Court

After the matter was remanded to the superior court,[6] 700 Wilshire and District filed various motions in an attempt to sever District's fraud claim[7] and, in accordance with our opinion in *700 Wilshire I*, enter a preliminary injunction, permanent injunction, and judgment on the declaratory relief and injunction claims that would prohibit the use of the alley for parking garage access.

At the August 17, 2012 preliminary injunction hearing, GSR made a purported special appearance under the name of its affiliate Greystar Equity Partners VII REIT (Greystar). GSR claimed that because GSR was not a party, the superior court lacked personal jurisdiction over it and could not prohibit its use of the alley for parking garage access.

On August 23, 2012, the superior court issued a preliminary injunction that did not mention GSR. The preliminary injunction prohibited only the Roosevelt Parties—

---

[4]     The rehearing petition was also filed by the Roosevelt Parties.

[5]     The petition for review was also filed by Roosevelt Lofts and The Roosevelt Building Owners' Association.

[6]     Upon remand, District filed a peremptory challenge pursuant to Code of Civil Procedure section 170.6, subdivision (a)(2), which resulted in the transfer of the matter to a different trial judge. Section 170.6, subdivision (a)(2) provides in relevant part: "A motion under this paragraph may be made following reversal on appeal of a trial court's decision, or following reversal on appeal of a trial court's final judgment, if the trial judge in the prior proceeding is assigned to conduct a new trial on the matter."

[7]     On October 16, 2012, the superior court granted the motion to sever and bifurcate District's fraud claim from the claims for injunctive and declaratory relief.

who had no current ownership interest in the Roosevelt Building or easement—from using the alley for parking garage access.

Although the preliminary injunction did not apply to GSR, 700 Wilshire Properties and District began prohibiting private vehicles from using the alley to access the parking garage. Claiming that its use of the alley could not be restricted in this litigation, GSR filed a motion for emergency relief in the bankruptcy court.

## A. GSR's Motion for Emergency Relief in the Bankruptcy Court

One of the points GSR raised in its motion for emergency relief was that under the bankruptcy court's order confirming Roosevelt Loft's reorganization plan (confirmation order), GSR had acquired the Roosevelt Building, the appurtenant easement, and the judgment (which at the time was subject to the appeal and was later reversed on appeal) without assuming any successor liability for Roosevelt Lofts' conduct prior to the effective date of the confirmation order (pre-effective date conduct). GSR's theory, as we understand it, was that this court reversed the judgment in the prior appeal based on Roosevelt Lofts' pre-effective date conduct and, under the confirmation order, GSR did not assume and was immune from any successor liability for Roosevelt Lofts' pre-effective date conduct, and, therefore, GSR was immune from our reversal of the judgment.

GSR also contended that it was not a party to the prior appeal from the judgment and, therefore, it could not be bound as a nonparty by our reversal of the judgment. GSR claimed that because the substitution of parties in the prior appeal was for the limited purpose of preserving the judgment that it had acquired under the confirmation order, its appearance in the appeal did not constitute a general appearance for jurisdictional purposes.

## B. The Bankruptcy Court's Order of August 28, 2012

On August 28, 2012, the bankruptcy court issued a three-part ruling in response to GSR's motion for emergency relief. First, the bankruptcy court prohibited GSR from

11

using the alley for parking garage access during school hours (i.e., during the hours when a school located in the 700 Wilshire Building was in session),[8] but allowed GSR to use the alley during nonschool hours for parking garage access. The bankruptcy court restricted GSR's use of the alley during school hours to "deliveries, trash pick-up, and tenant move-in and move-out vehicles (the 'Non-Car Use')."

Second, the bankruptcy court held that the confirmation order had eliminated GSR's successor liability for Roosevelt Lofts' pre-effective date conduct, but had not eliminated GSR's independent liability for its own conduct.

Third, the bankruptcy court held that in any pending or future state court litigation concerning the effect of the confirmation order on GS Roosevelt's use of the easement for parking garage access, "the following shall govern the application of the Confirmation Order:

"(a)    If the State Court finds that [GS Roosevelt and Greystar] have independent liability for the use of the Easement arising from [their] actions following the Effective Date, the Confirmation Order shall not bar (i) the State Court from entering any appropriate order or ruling against [them] or (ii) [District] or 700 Wilshire from continuing or commencing the Litigation against [them].

---

[8]    In a declaration filed in both the bankruptcy and superior courts, 700 Wilshire's Office Manager Sauli Danpour stated that "vehicle traffic into and out of the Roosevelt Building through the alleyway easement seems to be increasing. [¶] . . . On August 6, 2012, at approximately 12:15 p.m., I personally observed four vehicles exit the Roosevelt Building through the alleyway easement within a five minute period. True and correct copies of pictures which I personally took depicting the movement of three of these vehicles in the alleyway easement are attached hereto . . . ." Danpour further stated: "This is and continues to be an urgent matter since as of August 13, 2012, approximately 200 school aged children started attending a Charter School located within the [700 Wilshire] Building. [¶] . . . It is critical that the students are protected from injury and being struck by a vehicle while they are entering or exiting the Office Building through the stairway. It is impossible to accommodate students' ingress and egress from the Office Building through the Office Building's stairway while vehicles are allowed to enter and exit the Roosevelt [B]uilding" through the alley.

"(b) If the State Court finds . . . that (i) [GS Roosevelt and Greystar] have no such independent liability for the use of the Easement arising from [their] actions following the Effective Date, but (ii) ha[ve] liability solely as a successor to the Debtor, then the Confirmation Order shall bar (ii[i]) the entry of any order or ruling against [GS Roosevelt and Greystar] and (iv) [District] or 700 Wilshire from continuing or commencing the Litigation or action against [GS Roosevelt and Greystar]. If the State Court makes the foregoing finding set forth in this Paragraph 8(b), then (A) the limitations on [GS Roosevelt and Greystar's] Car Use set forth in Paragraph 4 of this Order shall have no further force or effect and (B) [District] and 700 Wilshire shall not have the right to block or impede [GS Roosevelt and Greystar's] access to the Easement in any way.

"(c) If the State Court makes the findings set forth above in Paragraph 8(b) of this Order, and additionally finds that [GS Roosevelt and Greystar] have acted to gain liability under any order against the Debtor in the Litigation (other than as a successor to the Debtor as described in Paragraph 8(b)(ii) hereof), the Confirmation Order shall not bar the State Court from entering any appropriate order or ruling against [GS Roosevelt and Greystar].

"(d) Nothing contained herein shall bar [District] or 700 Wilshire from commencing any lawsuit against [GS Roosevelt and Greystar] solely arising out of or related to [their] post-Effective Date actions."

### C. *The Superior Court's Order of October 1, 2012*

On October 1, 2012, the superior court applied the bankruptcy court's August 28, 2012 order concerning the confirmation order to the easement issues in this case. The superior court reasoned that: (1) because GSR had done nothing to incur any independent liability for its use of the easement, its liability arises solely from its status as a successor to Roosevelt Lofts; (2) according to the bankruptcy court's August 28, 2012 order, the confirmation order eliminated GSR's successor liability for Roosevelt Loft's pre-effective date conduct; and (3) because GSR is immune under the confirmation order

13

from successor liability for Roosevelt Lofts' pre-effective date conduct, GSR is not bound by the reversal of the judgment in the *700 Wilshire I* appeal and the superior court may not enter any declaratory or injunctive relief restricting GSR's use of the alley.

The superior court's analysis was based on the following paragraph in the bankruptcy court's August 28, 2012 order: "If the State Court makes the foregoing finding set forth in this Paragraph 8(b) [i.e., GSR has liability only as a successor for Roosevelt Loft's pre-effective date conduct], then (A) the limitations on [GS Roosevelt and Greystar's] Car Use set forth in Paragraph 4 of this Order shall have no further force or effect and (B) [District] and 700 Wilshire shall not have the right to block or impede [GS Roosevelt and Greystar's] access to the Easement in any way."

The superior court explained there was no evidence that GSR had incurred "independent liability for the use of the easement arising from [GSR's own] actions following 08/09/2011 [the effective date of the confirmation order]." The superior court further stated: "Because the orders made by this court are in personam, [GSR's] liability is only as successor to [Roosevelt Lofts] — therefore, under the order from the Bankruptcy Court[,] the Los Angeles County Superior Court is barred from entering any order or ruling against [GSR]."

### D.     *The Bankruptcy Court's Order of October 16, 2012*

On October 16, 2012, the bankruptcy court reviewed the superior court's October 1, 2012 ruling and, based on the superior court's failure to find any basis to impose "independent liability" against GSR: (1) lifted the bankruptcy court's August 28, 2012 restriction on GSR's use of the alley for parking garage access during school hours; and (2) barred 700 Wilshire and District from blocking or impeding GSR's "access to or use of the Easement in any way."

In its October 16, 2012 ruling, the bankruptcy court declared that it had made no attempt to define the scope of the easement. The bankruptcy court stated the state courts would be free to determine "the scope of the Easement" and "the validity of any action taken by [Roosevelt Lofts] to increase or affect the scope of the Easement."

14

*E..* *The Superior Court's Order of January 10, 2013*

On January 10, 2013, the superior court considered the request by District and 700 Wilshire to enter an amended proposed declaratory judgment and injunction (proposed judgment) prohibiting Roosevelt Lofts and its (unnamed) successors in interest from using the alley for parking garage access.[9] Although the proposed judgment did not mention GSR by name, it referred to GSR indirectly by: (1) attaching our opinion in the *700 Wilshire I* appeal, in which we discussed the substitution of GSR in place of Roosevelt Lofts; and (2) purporting to bind Roosevelt Lofts' "successors in interest."

---

[9] The proposed judgment stated in relevant part:

"A.     The rights and duties of District, 700 Wilshire, and Roosevelt Lofts LLC, in and the limits and restrictions on the use of, the easement property set out in the Court of Appeal Opinion (Exhibit '1'), are hereby incorporated by reference and made a part hereof as though fully set out at length.

"B.     As held by and stated in the Court of Appeal's Opinion, the use of the alleyway for private vehicular traffic is prohibited. The[] alleyway's use is limited to its historic uses which are for foot traffic, trash collection, emergency access and egress, the placement of trash collection dumpsters, and for the brief and temporary parking of delivery trucks and trash collection vehicles. Use of the alleyway for private vehicular traffic will overburden the easement and is expressly forbidden.

"C.     All parties are hereby expressly and permanently enjoined and restrained, for all time, from using the easement property except as specified hereinabove, until further Order of the Court, or unless all the parties have agreed in writing signed by their authorized representative and approved by the Court.

"D.     The judgment of contempt against the District having been reversed, the $1000.00 fine levied against the District was improper, and the District is entitled to return of the $1000.00 fine from the Los Angeles County Superior Court.

"E.     This Judgment applies to, binds, and makes subject to enforcement and to being held in contempt for noncompliance and otherwise sanctioned, all the parties and entities referred in paragraphs 2-6 hereof, and their successors in interest, and to all persons and entities employed by, acting for and on behalf of, and in concert with them, as co-conspirators, aiders and abettors, or otherwise.

"F.     The Court retains jurisdiction even after the remainder of the case that is remanded has resulted in a final judgment or a dismissal, enabling it to immediately enforce this Judgment at any time and to prevent, halt and punish noncompliance against any party or successor in interest to any party, or any third party within its authority.

"G.     This judgment is as to Roosevelt Lofts LLC only."

15

Because the proposed judgment referred to GSR indirectly, the superior court refused to sign it, stating the proposed judgment "seeks to do indirectly what the court has already indicated it cannot do directly." The superior court also concluded the proposed judgment would violate the bankruptcy court's October 16, 2012 order. In the superior court's view, it was prohibited by the bankruptcy court's October 16 order "from blocking GS Roosevelt's and Greystar's access or use of the easement in any way. . . . The proposed judgment would contradict this order from a court of superior authority."

## VII.  The Present Appeal and Petition for Writ of Mandate

On October 26, 2012, District filed a notice of appeal from the October 1, 2012 order denying its request to enter a preliminary injunction and judgment against GSR. (No. B244809.)

On March 25, 2013, District filed a petition for writ of mandate from the January 10, 2013 order denying its request to enter a judgment and injunction against Roosevelt Lofts and its (unnamed) successors in interest. (No. B247683.)

On April 30, 2013, we issued an alternative writ of mandate in which we directed the superior court to either:  (1) vacate the January 10, 2013 order denying District's motion for entry of judgment and enter a new and different order granting the motion and enter the proposed judgment and permanent injunction governing the uses of the easement; or (2) show cause why a peremptory writ of mandate should not issue.  After the superior court did not grant the requested relief, we vacated the original hearing date on the petition and, on our own motion, consolidated the petition and appeal for purposes of oral argument and decision.  On June 25, 2013, we denied GSR's motion to dismiss the appeal.

## VIII.  Judicial Notice

On May 23, 2013, we granted District's request to take judicial notice of certain court documents that included the following information:

16

1. A new superior court action was filed on January 8, 2013, by District and 700 Wilshire against GSR for quiet title, declaratory relief, and an injunction. (L.A. Super. Ct. Case No. BC498665) (Quiet Title Action). The suit was filed in response to GSR's contention that it was never a party to this action and, therefore, was not bound by our reversal of the judgment in the *700 Wilshire I* appeal.

2. GSR (appearing as Greystar) moved for emergency relief in the bankruptcy court. GSR sought to enjoin prosecution of the Quiet Title Action on the ground that it violated the protections afforded to it under Roosevelt Lofts' confirmation order.

3. On January 30, 2013, the bankruptcy court denied GSR's motion. The order stated in relevant part as follows: "(2) This Court makes no ruling as to whether the Appellate Opinion [in *700 Wilshire I*] as to the scope of the easement is *in personam* or not. To the extent that any determination against the defendants in the Original Case is *in personam*, it cannot be applied against Greystar except as stated in paragraph 5 hereto. [¶] (3) Any issues concerning the use of the easement from and after August 20, 2011, which was the Effective Date of the confirmed plan, can be litigated in the state court against Greystar. [¶] (4) Except as set forth in paragraph 5 hereto, Greystar has no liability for any damages that may be awarded as to the use of the easement or other actions that occurred prior to August 20, 2011. [¶] (5) This Court makes no ruling as to whether Greystar's activities in the Original Case or during the appeal of the Original Case constitute a waiver or other modification of the immunity granted to Greystar under the Confirmation Order. This is a matter of state law and is to be determined in the state court."

## DISCUSSION

## DISTRICT'S APPEAL FROM THE OCTOBER 1, 2012 ORDER

In its appeal from the October 1, 2012 order denying its motion for a preliminary injunction and judgment against GSR, District contends because GSR was a party to the

17

prior appeal, personal jurisdiction was obtained over GSR, which therefore is bound as a party by our disposition of the prior appeal, and the superior court had no valid grounds to deny its motion. We conclude District is correct and the October 1 order must therefore be reversed. As we made clear in our *700 Wilshire I* opinion, using the alley for parking garage access would overburden the easement and District is entitled to a judgment and injunction against GSR, as a party to this action, prohibiting such use.

Before discussing the merits of District's appeal, we briefly address GSR's renewed motion to dismiss the appeal, which was previously denied on June 25, 2013. In its respondent's brief, GSR renews its motion to dismiss on the ground that the appeal was taken from the denial of a motion to join a party, which is a nonappealable order. We disagree, however, with GSR's contention that the appeal was taken from the denial of a motion to join a party. The record supports only one reasonable conclusion, which is that the appeal was taken from the refusal to grant an injunction.

According to its caption, the motion requested "an order that: (1) GS Roosevelt, LLC is a party to this action for all purposes; (2) that GS Roosevelt, LLC is subject to this court's orders, including its order granting the District's motion [for] preliminary injunction; and (3) that judgment may be entered against it or, alternatively, for an order naming GS Roosevelt, LLC as a party and to amend the proposed judgment." Based on the caption and the facts of this case, the purpose and effect of the motion was to: (1) bind GSR to the preliminary injunction entered against the Roosevelt Parties; and (2) enter a judgment and permanent injunction against GSR.

When the trial court denied the motion, it refused to grant a preliminary or permanent injunction against GSR. Accordingly, when District appealed from the denial of the motion, it appealed from an order refusing to grant an injunction, which is an appealable order. (Code Civ. Proc., § 904.1, subd. (a)(6).) The motion to dismiss is therefore denied.

18

**I.      Personal Jurisdiction May Be Conferred by Appearing in an Action**

District contends that GSR's substitution for Roosevelt Lofts in the prior appeal constituted a general appearance in which GSR consented to this court's jurisdiction and became bound, as a party, by all orders issued in this case.  GSR disagrees and argues that it is not subject to this court's jurisdiction because:  "(i) this Court must give full faith and credit to the Bankruptcy Court orders holding that GSR cannot be bound in the Underlying Action; (ii) the Underlying Action was brought and prosecuted as an in personam action that cannot be transformed at this stage into an in rem proceeding; (iii) GSR has not taken any action that equitably or legally constitutes its consent to being bound in the Underlying Action; and (iv) as a non-party, GSR cannot otherwise be bound in the Underlying Action."  As we now explain, we conclude that District has the more persuasive argument.

   *A.      Standard of Review*

In evaluating the court's jurisdiction over GSR, we apply the de novo standard of review.  Where, as here, no conflict in the evidence exists, the question of jurisdiction is purely one of law and the reviewing court conducts an independent review of the record. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 449.)

GSR contends the denial of a motion to join a party is subject to the abuse of discretion standard.  As we previously discussed, however, we reject GSR's contention that the appeal was taken from the denial of a motion to join a party.  Because we believe the dispositive issue is jurisdictional—whether GSR's substitution for Roosevelt Lofts in the prior appeal constituted a general appearance in which GSR consented to this court's jurisdiction and became bound, as a party, by all orders issued in this case—we conclude the applicable standard is the de novo standard of review.

   *B.      Consent to Jurisdiction Generally*

Code of Civil Procedure section 410.50 provides:  "(a) Except as otherwise provided by statute, the court in which an action is pending has jurisdiction over a party

19

from the time summons is served on him as provided by Chapter 4 (commencing with Section 413.10). A general appearance by a party is equivalent to personal service of summons on such party. [¶] (b) Jurisdiction of the court over the parties and the subject matter of an action continues throughout subsequent proceedings in the action."

"A person's consent to jurisdiction 'may be expressed by words or by conduct.' (Rest.2d Conf. of Laws, § 32, com. a, p. 130.)" (*Szynalski v. Superior Court* (2009) 172 Cal.App.4th 1, 7 (*Szynalski*).) "A general appearance by a party is equivalent to personal service of summons on that party. (C.C.P. 410.50(a); see Rest.2d, Conflict of Laws § 33; *Farmers & Merchants Nat. Bank of Los Angeles v. Superior Court* (1945) 25 C.2d 842, 846 . . . .)" (2 Witkin, Cal. Procedure (5th ed. 2008) Jurisdiction, § 198, p. 808.)

"[A] party's characterization of an appearance as a 'special appearance' is not conclusive for purposes of determining whether the party 'consented' to the court's personal jurisdiction by appearing in an action. (E.g., *Greener v. Workers' Comp. Appeals Bd.* (1993) 6 Cal.4th 1028, 1037 ['Notwithstanding a "special appearance" designation on a motion to quash, if the movant seeks relief on any basis other than lack of personal jurisdiction, he or she makes a general appearance.']; *In re Clarke* (1899) 125 Cal. 388, 392 ['On general principles, a statement that a defendant or party makes a special appearance is of no consequence whatever. . . . [I]f he appears and asks for any relief which could only be given to a party in a pending case, or which itself would be a regular proceeding in the case, it is a general appearance, no matter how carefully or expressly it may be stated that the appearance is special. It is the character of the relief asked, and not the intention of the party that it shall or shall not constitute a general appearance, which is material.']; see generally, 2 Witkin, Cal. Procedure, *supra*, Jurisdiction, § 207, pp. 815-817.) Thus, a party's effort to restrict jurisdiction by a reservation is not necessarily conclusive." (*Szynalski*, *supra*, 172 Cal.App.4th at p. 11.)

**II.  After GSR Was Substituted for Roosevelt Lofts in the Prior Appeal, GSR Made a General Appearance and Requested Relief That Is Available Only to a Party**

It is undisputed that in the prior appeal, GSR formally moved to be substituted in place of Roosevelt Lofts for all purposes and we granted that motion.  By appearing through its counsel and defending the trial court's judgment in the prior appeal on the merits, seeking a rehearing of our reversal of the judgment, and petitioning the Supreme Court for review of our decision, GSR sought relief that is available only to a party.  We conclude, as a matter of law, GSR's actions constituted a general appearance by which it consented to this court's jurisdiction.  (*Szynalski*, *supra*, 172 Cal.App.4th at pp. 10-11.)

GSR never contested this court's personal jurisdiction in the prior appeal.  It was only after the matter was remanded to the superior court that GSR purported to make a special appearance.  By then, however, it was too late for GSR to contest the superior court's personal jurisdiction, for "[j]urisdiction of the court over the parties and the subject matter of an action continues throughout subsequent proceedings in the action." (Code Civ. Proc., § 410.50, subd. (b).)  In other words, once personal jurisdiction is acquired, it continues throughout the remainder of the litigation.

GSR's characterization of its appearance as a special appearance is "not conclusive for purposes of determining whether the party 'consented' to the court's personal jurisdiction by appearing in an action. (E.g., *Greener v. Workers' Comp. Appeals Bd.* (1993) 6 Cal.4th 1028, 1037 ['Notwithstanding a "special appearance" designation on a motion to quash, if the movant seeks relief on any basis other than lack of personal jurisdiction, he or she makes a general appearance'].)" (*Szynalski*, *supra*, 172 Cal.App.4th at p. 11.)

**III.    Our Determination in the Prior Appeal—That 700 Wilshire and District Were Entitled to Declaratory and Injunctive Relief Because the Proposed Use of the Alley Would Overburden the Easement—Constitutes the Law of the Case and Is Binding on GSR as a Party to This Action**

In the prior appeal, we concluded in relevant part that the Roosevelt Parties' unilateral decision to access the parking garage through the alley was not within the normal development of the Roosevelt Building and would therefore overburden the easement.  We held that, in light of the jury's special findings and the applicable law pertaining to the shared use of a common easement, 700 Wilshire and District were entitled to a judgment in their favor on their claims for declaratory and injunctive relief.  We directed that upon completion of the new trial of District's fraud claim, which has since been severed from the other causes of action, the superior court was to enter a new judgment that, consistent with the views set forth in our opinion, granted appropriate declaratory and injunctive relief to 700 Wilshire and District.

This was a final determination that constitutes the law of the case and is binding on all parties including GSR.  As we previously explained, GSR consented to this court's personal jurisdiction when, after filing a formal motion for substitution of parties and being made a party, it defended the trial court's judgment in the prior appeal, sought a rehearing of our reversal of the judgment, and petitioned the Supreme Court for review of our decision.

In its respondent's brief, GSR contends the superior court "correctly denied the *Motion to Make GSR a Party*" because, under the bankruptcy court's confirmation order, it is immune from the judgments and orders issued in this case.  GSR is mistaken on both points.  First, the motion to make GSR a party was superfluous because GSR has been a party to this action since the date of our October 14, 2011 order granting GSR's substitution motion.  Second, the bankruptcy court's confirmation order has no bearing on our authority to prohibit GSR, as a party who is subject to this court's personal jurisdiction, from overburdening the easement by using the alley to access the parking garage.

The record is undisputed that the bankruptcy court has never defined or attempted to define the scope of the easement or to determine whether allowing private vehicles to access the parking garage through the alley would overburden the easement.  In its October 16, 2012 ruling, the bankruptcy court specifically stated that it was not defining the scope of the easement but was leaving it to the state courts to determine "the scope of the Easement" and "the validity of any action taken by [Roosevelt Lofts] to increase or affect the scope of the Easement."  Accordingly, GSR's contention that the superior court was prohibited by the bankruptcy court from granting declaratory or injunctive relief is not supported by the record.

## DISTRICT'S PETITION FOR WRIT OF MANDATE

In its petition for writ of mandate, District is challenging the January 13, 2013 denial of its motion for a declaratory relief judgment and injunction against Roosevelt Lofts and its (unnamed) successors in interest.  Because District has prevailed on its appeal, which will result in the entry of a judgment and injunction against GSR as a party to this action, we dismiss the petition as moot.

## DISPOSITION

In the appeal (No. B244809) from the October 1, 2012 order denying District's motion to enter a preliminary injunction and judgment against GSR, the order is reversed. The matter is remanded with directions to grant the motion and to enter an injunction and judgment against GSR in accordance with the views set forth in this opinion.  District is entitled to its costs.

23

In the petition for writ of mandate (No. B247683), the alternative writ is discharged and the petition is dismissed as moot.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


                                        SUZUKAWA, J.

We concur:


EPSTEIN, P. J.


MANELLA, J.